UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SORRELL JOSEPH JACKSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1109** |
| **CORRECT CARE SOLUTIONS, ET AL.** | **SECTION "T"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.     Factual Background**

Plaintiff Sorrell Joseph Jackson ("Jackson") is a pretrial detainee housed in the St. Tammany Parish Jail ("STPJ") in Covington, Louisiana.[1] Jackson filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendants Correct Care Solutions ("CCS"), St. Tammany Parish Sheriff Randy Smith, STPJ Warden Daniel Fleischman, Dr. Jose Ham, Nurse Practitioner Kenneth, Nurse Practitioner Sharon, and Nurse Dee Dee, each in their individual and official capacities, alleging that he received inadequate medical care while in STPJ.[2]

**A.     The Complaint (ECF No. 5)**

Jackson alleges that on or about February 14, 2023, he heard something pop in his right leg and the next day he could barely walk.[3] On February 15, 2023, he awoke sweating and in pain.

---

[1] ECF No. 5, ¶III(A), at 3.
[2] *Id.*, ¶III(B), at 4.
[3] *Id.*, ¶IV, at 4.

At the medical bay, Nurse Dee Dee took his temperature and put him in the Covid-19 quarantine tier without looking at his leg. His condition worsened while there.[4] He claims that he was in agony and could not walk or take a shower.[5] He also began feeling depressed and hopeless and lost his appetite. Jackson further alleges that he requested emergency medical assistance and a wheelchair numerous times and that his requests were denied.[6]

On February 24, 2023, Nurse Brenda took a look at the abscess on his right leg just below his buttocks during pill-call. She had him taken to medical by wheelchair where he was examined by Nurse Practitioner ("NP") Sharon. She told plaintiff that he would have to go the emergency room if the swelling did not subside in a few days. On March 2, 2023, he was taken for an x-ray and asked NP Sharon if he could go to the emergency room since his leg was not better. Before she could respond, Nurse Dee Dee closed the office door.

Jackson alleges that on March 3, 2023, he was taken by Nurse Keith to medical for another x-ray. Nurse Keith examined Jackson and announced that he needed to be routed to the emergency room. Jackson claims that Nurse Keith attempted to call Dr. Ham but was unsuccessful. According to Jackson, Nurse Keith changed his mind and Jackson received no further treatment until he awoke one morning with blood and puss on his sheets. Jackson claims that he was finally brought to the emergency room and diagnosed with "MRSA blood poisoning," a life-threatening infection. Jackson alleges that he remained in the hospital for seven days, where he underwent surgery and was given two bags of vancomycin each day.

Jackson further alleges that, on his return to the jail, the medical staff did not follow the emergency room doctor's orders on how often to change the bandages, sometimes waiting up to

---

[4] *Id*. at 5.
[5] *Id*. at 5-6.
[6] *Id*. at 6.

36 hours between changes. Jackson alleges that on one occasion, on April 18, 2023, NP Kenneth and Dr. Ham told him that the care he was receiving was "just and precise." *Id*.

Jackson also alleges that he is suing Sheriff Smith and Warden Fleischman in their supervisory role and for negligence in treatment when they reviewed his administrative grievance complaint.[7] Jackson states that he is alleging claims against defendants for claims of malpractice, cruel and unusual punishment, due process, racial discrimination, pain and suffering, and the hopelessness and depression associated with his extreme physical pain and injury, for which he seeks compensatory, punitive, and nominal damages.[8] Jackson also requests regular appointments with a physical therapist and pain doctors not associated with the jail.[9]

B.   **"Sheriff Review Decision" attached to Complaint (ECF No. 5-1)**

In connection with his claims, Jackson attached a copy of the June 30, 2023, response from the Sheriff's office to Jackson's appeal of his May 18, 2023, administrative grievance complaint.[10] In the response, the Sheriff's in-house counsel outlined the jail records related to Jackson's medical care for his leg and concluded that "the medical staff appropriately addressed your medical needs from the date [Jackson] initially presented in the clinic."[11]

The summary included in the response indicates that on February 14, 2023, medical staff addressed Jackson's complaint of right leg pain from what Jackson described as a "pulled muscle."[12] He was given medication and told to return if symptoms worsened. The next day, February 15, 2023, Jackson was taken to the medical clinic by security staff for complaints of chest pain. Jackson reported congestion, fever, and other COVID-19 type symptoms. Following a

---

[7] *Id*. at 6.
[8] *Id*. at 6; *id*., ¶V, at 5.
[9] *Id*.
[10] ECF No. 5-1, at 1.
[11] *Id*. at 1.
[12] *Id*.

COVID test, he was placed in quarantine as jail procedures require, and provided medications for symptom relief.

The following day, February 16, 2023, Jackson had an x-ray taken of his left femur which showed no evidence of a fracture, dislocation, or soft-tissue swelling. Jackson was examined again on February 24, 2023, by NP Sharon, who ordered a second set of x-rays and a follow-up visit. On March 2, 2023, the x-rays were again negative, including no soft-tissue swelling. On March 3, 2023, NP Kenneth submitted a referral for Jackson to be seen by the orthopedic clinic at University Medical Center. Following an examination by NP Sharon on March 15, 2023, Jackson was routed to the St. Tammany Parish Hospital for evaluation and care. The summary also indicated that, at the time, Jackson was scheduled for an MRI.

## II.     Standards of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d

4

882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.   Analysis**

    **A.   Claims Against Sheriff Smith and Warden Fleischman**

        **a.   Individual Capacity**

A state actor, like Sheriff Smith and Warden Fleischman, may be liable under § 1983 only if he was personally involved in the acts causing the deprivation of the plaintiff's constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation.  *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).  Other than naming these officials as defendants, Jackson asserts no claims against the Sheriff or Warden directly.  The only arguable assertion against them is that they did not take action in his favor on review of his administrative grievance complaint.  These officials cannot be held liable under § 1983 for responding to his grievance complaint or denying him relief in that proceeding.  *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013) ("A prisoner does not have a constitutionally protected liberty interest in having 'grievances resolved to his satisfaction.'") (quoting *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005)); *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006) (same).

Without some alleged causal link between an act by the Sheriff or the Warden and his claims of inadequate medical care, Jackson has failed to allege a non-frivolous claim against these defendants. Accordingly, Jackson's claims against Sheriff Smith and Warden Fleischman in their individual capacities should be dismissed pursuant to § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

### b. Supervisory and/or Official Capacity

As supervisory officials, Sheriff Smith and Warden Fleischman cannot be held liable pursuant to § 1983 under a theory of *respondeat superior* or vicarious liability simply because an employee or subordinate at the jail allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A & M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). A supervisory official may be held liable for his subordinates' actions only if the named official issued an order or implemented an unconstitutional policy that causally resulted in plaintiff's injury. Jackson has not alleged any such level of involvement or liability against these officials.

A similar policy concern could impose liability against a policymaking official when named in an official capacity. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Sheriff Smith or Warden Fleischman would in reality be a claim against the local governmental body. The United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The

description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

*Spiller v. City of Texas City, Pol. Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citations, quotation marks, and brackets omitted). Thus, a plaintiff would have to allege not merely that the defendant as a final policymaker implemented an unconstitutional policy or custom, and that policy or custom was the proximate cause of his injury or damage. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, the plaintiff must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. *See, e.g., Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003).

Under a broad reading of his *pro se* complaints, Jackson has not alleged that any policy of the Sheriff's Office, the jail, or the Parish was involved in any way with his medical care. Without an identified policy responsible for a violation of a constitutional right, Jackson also has failed to state a non-frivolous claim against the Sheriff or the Warden in their official capacities.

Jackson's claims against Sheriff Smith and Warden Fleischman in their supervisory roles and official capacities should be dismissed pursuant to § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

### B. Claims Against CCS, Dr. Ham, NP Kenneth, NP Sharon, and Nurse Dee Dee

#### a. Official Capacities

Jackson's claims against the medical personnel, defendants Dr. Ham, NP Kenneth, NP Sharon, and Nurse Dee Dee, in their official capacities, and their apparent employer CCS, are

7

addressed under the *Monell* standards set forth above. *Belcher v. Lopinto*, 492 F. Supp. 3d 636, 644 (E.D. La. Oct. 5, 2020); *Quatroy v. Jefferson Par. Sher.'s Off.*, Nos. 04-451/04-1425, 2009 WL 1380196, at *5 (E.D. La. May 14, 2009). This requires a plaintiff to establish that the defendant is a final policymaker, an unconstitutional official policy exists, and the policy caused the violation of plaintiff's constitutional rights. *Spiller*, 130 F.3d at 167; *Woodward v. Lopinto*, No. 18-4236, 2021 WL 1969446, at *5 (E.D. La. May 17, 2021) ("The test to determine liability for a private prison-management corporation under § 1983 is more or less identical to the test employed to determine municipal or local government liability.") (citing *Monell*, 436 U.S. at 694). A plaintiff cannot simply "infer a policy" because he interacted with an entity's employees. *Carter v. Strain*, No. 09-0015, 2009 WL 3231826 at *2 (E.D. La. Oct. 1, 2009) (quoting *Colle*, 982 F.2d at 245); *see also Wetzel*, 2009 WL 5125465, at *3. In addition, distinct and isolated incidents alone are not sufficient to allege liability under *Monell*. *Webb v. Town of St. Joseph*, 925 F.3d 209, 214 (5th Cir. 2019).

 Jackson has not pointed to a policy at the jail or in the medical department that controlled or dictated how or if he was treated for his medical conditions. He instead points only to discretionary acts of the individual care providers in addressing his complaints. As will be discussed further, Jackson has not alleged that the care received from those individuals was unconstitutional. Thus, his official capacity "claims fail without an underlying constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 648-49 (5th Cir. 2013) (when a plaintiff fails to allege a constitutional injury attributable to the individual defendants, he likewise has failed to state a claim that a policy was the moving force behind a constitutional violation.) His allegations, therefore, are insufficient to state a non-frivolous claim against CCS or against Dr. Ham, NP Kenneth, NP Sharon, and Nurse Dee Dee in their official capacities.

The claims against CCS and Dr. Ham, NP Kenneth, NP Sharon, and Nurse Dee Dee in their official capacities should be dismissed pursuant to § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

### b. Individual Capacities

Jackson's claims against CCS, Dr. Ham, NP Kenneth, NP Sharon, and Nurse Dee Dee in their individual capacities fair no better. For the reasons that follow, Jackson cannot sue CCS in an individual capacity. Jackson has alleged no action or inaction by or basis for Dr. Ham to be held liable under § 1983. Considering his allegations and the complaint as a whole, Jackson also fails to indicate an intentional indifference to his medical needs by any of the other medical personnel named in his complaint.

### 1. CCS in an Individual Capacity

Although the complaint asserts no specific claims against CCS, Jackson indicates an intent to sue the entity in an individual capacity. It is common knowledge that CCS is an entity that contracts with the St. Tammany Parish Sheriff's Office to provide medical care to persons housed in STPJ. The law recognizes CCS as a state actor for purposes of § 1983 because its actions in providing medical care to prisoners are attributable to the local governing authorities. *See Bishop v. Karney*, 408 F. App'x 846, 848 (5th Cir. 2011) (citing *West v, Atkins*, 487 U.S. 42, 49-50 (1988)). Therefore, a suit against CCS, rather than its individual employees, is tantamount to a suit against Sheriff Smith and his office as the local municipal governing body. Because of this, Jackson cannot assert a claim against it in an individual capacity. *Workman v. CorrectHealth, LLC*, No. 12-408, 2012 WL 13202489, at *3 (E.D. La. Apr. 19, 2012).

The claims against CCS in an individual capacity should be dismissed pursuant to § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

## 2. <u>Medical Indifference - Fourteenth Amendment Due Process</u>

Jackson alleges, under a broad reading of the claims, that defendants NP Kenneth, NP Sharon, and Nurse Dee Dee failed to timely or adequately provide him with care for his leg pain. He makes no such direct claim against Dr. Ham. As applied to pretrial detainees like Jackson, "[t]he Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care." *Reed v. Krajca (Estate of Henson)*, 440 F. App'x 341, 343 (5th Cir. 2011). With regard to inadequate medical care claims, a violation occurs only when the conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs" that "constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Under this deliberate indifference standard, a prison official is not liable unless the official knows of and disregards an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Deliberate indifference is manifested in the providers intentional denial of medical care or intentional interference with the treatment once prescribed. *Farmer*, 511 U.S. at 847. The Fifth Circuit has repeatedly noted that deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . .." *Alton*, 168 F.3d at 201.

Therefore, to state a cognizable claim of deliberate indifference, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency." *Farmer*, 511 U.S. at 847. Thus, mere disagreement with medical treatment

is insufficient to state a claim of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

As noted above, Jackson's complaint wholly fails to assert any allegation or basis for liability against Dr. Ham. Dr. Ham's name is mentioned twice in the complaint. First, he is mentioned when NP Kenneth was unable to reach the doctor by phone. Second, he is mentioned when Jackson claims he came to see him to explain that the care he was receiving was "just and precise."[13] In neither instance does Jackson assert that Dr. Ham denied him care or was indifferent to his medical needs at the level required by *Estelle*.

Jackson's complaint also does not allege or demonstrate this level of intentional indifference by any of the other named medical providers under the standards set forth above. As the United States Fifth Circuit has found, to satisfy the "extremely high standard" of intentional indifference, a plaintiff "must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756 (internal quotation marks and citations omitted).

Jackson does not allege that he was wholly ignored or denied medical care or treatment for his symptoms or leg pain. Instead, he acknowledges that each of his complaints were addressed by a Nurse or Nurse Practitioner each time he requested care or shortly thereafter. His care, as he describes it, included weekly and sometimes daily examinations, medication for his varied symptoms, multiple diagnostic x-rays, and several referrals to the hospital or emergency room. While he was clearly dissatisfied with the care he received and the methods of treatment by the various medical personnel, this type of disagreement is not enough to state a non-frivolous claim

---

[13] ECF No. 5, ¶IV, at 6.

of medical indifference under the foregoing standards. *See Varnado*, 920 F.2d at 321; *Vaughn v. Bassett*, No. 22-10962, 2024 WL 2891897, at *4 (5th Cir. 2024) (". . . disagreement about the recommended medical treatment is generally not sufficient.") (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018)).

Jackson's allegations of delay also do not rise to the level of deliberate indifference or demonstrate that any delay between examinations and treatment resulted in a substantial harm or exacerbated or worsened the alleged injury. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (Mere delay in receiving medical care is not, by itself, a constitutional violation); *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (same); *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (A plaintiff must show, at a minimum, deliberate indifference to his serious medical needs that results in substantial harm.) Jackson also acknowledges in his complaint that he continued to receive follow-up medical care and medication, both at the jail and from outside providers, and possibly even surgery for his medical issues.

Jackson's complaint fails to state a non-frivolous claim arising from the alleged delayed or inadequate medical care by defendants CCS, Dr. Ham, NP Kenneth, NP Sharon, and Nurse Dee Dee. The claims against each of these defendants in their individual capacities should be dismissed pursuant to § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

### 3. Inadequate Medical Care – Fourteenth Amendment Equal Protection

Broadly construing the *pro se* complaint, Jackson seeks relief on the grounds of race discrimination in providing him medical care. Jackson offers no explanation of his grounds for doing so or by whom he believes discrimination was committed. Failure to identify the person against whom he asserts the claim is fatal to stating a § 1983 claim. *Flagg Bros. v. Brooks*, 436

U.S. 149, 156 (1978) (a plaintiff bringing a § 1983 complaint is required to identify both a constitutional violation and the responsible person acting under color of state law).

In addition, the Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted); *see Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). To establish an Equal Protection Clause violation, a plaintiff must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted); *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007).

A "class of one claim" like Jackson's alleges differing treatment that is not based on membership in a suspect class or on the infringement of a fundamental right. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594 (2008); *Wood*, 836 F.3d at 539. "'[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action - even if irrational - does not deny them equal protection of the laws.'" *Little v. Tex. Atty. Gen.*, No. 14-CV-3089, 2015 WL 5613321, at *6 (N.D. Tex. Sep. 24, 2015) (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)). Thus, to state a claim, the plaintiff must allege that "(1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Id.* (internal quotation marks and citation omitted). A plaintiff must show "that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000),

13

*overruled on other grounds*, *McClendon v. City of Columbia*, 305 F.3d 314, 328-29 (5th Cir. 2002)).

In this case, Jackson does not actually assert a claim of race discrimination and merely mentions the phrase in his request for relief. Even under a broad reading, Jackson fails to allege anywhere in his complaint that he was treated differently from any other prisoner, much less one of a different race, by the doctor and nurses at the jail because of his race. His claims are conclusory and insufficient to state a claim of discrimination. *See Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir.1990) (vague and conclusory allegations that equal protection rights have been violated are insufficient to raise an equal protection claim); *Chapman v. Bee Cnty. Jail Medical Provider*, No. 22-00117, 2022 WL 4486411, at *6 (S. D. Tex. Aug. 23, 2022), *report and recommendation adopted by* 2022 WL 4490177, at *1 (S.D. Tex. Sep. 27, 2022). Jackson provides no specific facts or allegations, nor the identity of a state actor who engaged in race discrimination. He does not allege that other inmates were similarly situated to him as to pain levels and/or their needs for certain medications and treatments.

Without any of this, Jackson has failed to allege a non-frivolous claim of race discrimination in connection with his medical care. *Alvarez v. Bergt*, No. 16-cv-39, 2016 WL 11200944, at *6 (E.D. Tex. Aug. 10, 2016) (recognizing that, in order to state a "'class of one' equal protection claim," plaintiff must allege facts "showing any such differential treatment had no rational basis"). For these reasons, Jackson's race discrimination (or denial of equal protection claim) against the defendants should be dismissed pursuant to § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

    C.    **<u>State Law Claims</u>**

Jackson seeks relief in his complaint arising from defendants' malpractice and negligent treatment apparently intertwined with his federal claims of inadequate medical care. Jackson's claims based on negligence and malpractice are not sufficient to state a § 1983 claim. *See Estelle*, 429 U.S. at 106; *Gibson v. Collier*, 920 F.3d 212, 219-20 (5th Cir. 2019). To the extent Jackson intended to assert these claims under state law, the claims would involve purely state law questions that are best and ordinarily left to the state courts to decide.

As addressed above, Jackson's § 1983 claims should be dismissed and no other basis for federal subject matter jurisdiction is otherwise reflected from the face of this complaint. Therefore, the Court has discretion either to decline or exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3). Considering the provisions of § 1367(c) and balancing the relevant factors of judicial economy, convenience, fairness, and comity,[14] the Court should decline to exercise jurisdiction and dismiss without prejudice Jackson's state law malpractice and negligence claims.

## IV.   Recommendation

It is therefore **RECOMMENDED** that plaintiff Sorrell Joseph Jackson's § 1983 claims against defendants Correct Care Solutions, St. Tammany Parish Sheriff Randy Smith, Warden Daniel Fleischman, Dr. Jose Ham, Nurse Practitioner Kenneth, Nurse Practitioner Sharon, and Nurse Dee Dee, each in their individual and official capacities, be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

---

[14] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350-51 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872-73 (5th Cir. 2016); *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158-59 (5th Cir. 2011); *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).

It is further **RECOMMENDED** that plaintiff Sorrell Joseph Jackson's state law claims of negligence and malpractice be **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[15]

New Orleans, Louisiana, this  8th  day of July, 2024.

                                            **KAREN WELLS ROBY**
                                **UNITED STATES MAGISTRATE JUDGE**

---

[15]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.